UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DANNY MELTON, #12812                                                                                    PETITIONER

VS.                                                                                  CIVIL ACTION NO. 3:08CV142TSL-FKB

RAYFORD HORTON, SR., ET AL.                                                                        RESPONDENTS

REPORT AND RECOMMENDATION

This cause is before the undersigned on the petition of Danny Melton for habeas corpus relief pursuant to 28 U.S.C. §2254. Having considered Melton's petition, the Respondent's answer and Melton's traverse, the undersigned concludes, for the reasons which follow, that the petition is not well taken and recommends that it be denied.

I. FACTS AND PROCEDURAL HISTORY

The facts are set forth in the Mississippi Court of Appeals' decision and are as follows:

> On February 15, 2005, approximately six sheriff's deputies were involved in an undercover purchase of drugs from Melton's neighbor, Jeff Wilson. A few minutes passed between the actual purchase and the arrival of the deputies. Upon arrival the deputies could not locate the marked purchase money. A search of the area included Melton's adjacent yard. A few items that were commonly used in the manufacture and use of methamphetamine were located on Melton's property. A search warrant was obtained and more incriminating items were found on Melton's property which led to his arrest and indictment. The details of how the items were located that led to a search warrant are the subject of this appeal and are discussed below. . . .
> Melton testified that he pulled into his driveway, his fiancé pulled in behind him, and then the Lincoln County Sheriff and a few people with the sheriff pulled into Melton's driveway. Deputy Barefield was the only witness to testify at the suppression hearing. The deputy testified that when he approached Melton, the sheriff was already speaking with Melton. Melton stated that the sheriff informed him that the deputies next door were trying to locate some marked money relating to the drug bust at Wilson's house and they might want to speak with Melton for a minute. Melton said he replied, "yes, sir."
> Melton, his fiancé, his daughter, her boyfriend, and Melton's grandchild were

standing in the front yard when Deputy Barefield approached and requested to see their money. They all complied with the request. None of the money matched the serial numbers of the marked money. Melton claims that at this point he requested that all of the law enforcement leave his property. Melton also claims that he told the officers that they were trespassing. Whether Melton made these statements is disputed.

   Deputy Barefield testified that he communicated to Melton that the deputy would like to take a look around Melton's yard in an effort to locate the missing money. Deputy Barefield testified that he explained to Melton that Melton had the right to refuse giving consent to the search. Wilson could have placed the money outside somewhere in his yard or in Melton's adjacent yard as there was a few minutes delay between the purchase of drugs and the arrival of police. The deputy testified that Melton gave verbal consent to the search because Melton "stated okay."

   Melton either walked beside or trailed closely behind the deputy as the two walked along the fence line separating the two yards and into Melton's backyard. Deputy Barefield became suspicious of some items on the ground in Melton's yard. The items found in Melton's yard included a two-liter bottle containing a white liquid substance, another bottle, and a piece of burnt tin foil. Melton stated he did not know what the objects were. One of the bottles had a strong ammonia smell. Deputy Barefield recognized that these items were used in the manufacture and use of methamphetamine.

   The deputy communicated to Melton that information was received that Melton used his carport to manufacture methamphetamine. The original source of this information was not disclosed. Melton became visibly worried at this point and forbade any further access to his property including the carport, shed, and house. As soon as Melton made this statement denying further access without a search warrant, the deputy ceased any further search, departed from Melton's property and proceeded to obtain a search warrant based only upon the items found in Melton's yard. Other deputies watched the property while a search warrant was being obtained.

   Based upon the suspicious items found in Melton's yard, Deputy Barefield was able to obtain a search warrant for Melton's property. A search of Melton's carport and property revealed additional items which led to Melton's arrest and indictment. Deputy Barefield testified that the search warrant was obtained because of the items found in Melton's yard and not based upon any previous information that Melton was involved with manufacturing methamphetamine. The missing money was later found at Wilson's property.

Melton v. State, 950 So.2d 1067, 1069-71 (Miss. App., 2007).

   Thereafter, the Lincoln County grand jury returned a four-count indictment against

Melton, charging : "[1]the unlawful possession of precursor chemicals with intent to manufacture methamphetamine, [2] unlawful manufacture of methamphetamine, [3] unlawful possession of less than one tenth of a gram of methamphetamine with intent to distribute, and [4] conspiracy to manufacture methamphetamine."  Id. at 1069.  Melton's fiance', Tina Leggett, as well as his daughter's boyfriend were charged in the conspiracy count.  After Tina Leggett was severed from the case, the petit jury convicted Melton of the first three counts and his appeal was heard by the Mississippi Court of Appeals.[1]  Id.  Melton received thirty-year sentences as to Counts 1 and 2 and a four-year sentence as to Count 3, all ordered to run concurrently.  Additionally, Melton received five years of post- release supervision.

     Melton, through the same retained counsel who had represented him in the trial court, assigned as error the following in his appeal:.

> A.  The defendant was illegally detained. The state had no grounds for detaining Danny Melton as the investigation concerned the defendant's neighbor and there was no evidence of the defendant's involvement in this matter; and
> B. The defendant did not and could not give valid consent to the search of his premises. Manifest error was committed by the trial court by not suppressing the tainted evidence retrieved from the yard and home of the defendant.

On March 6, 2007, the Mississippi Court of Appeals affirmed the conviction in a written opinion. Id. at 1069.

     On January 9, 2008, Melton, proceeding pro se, filed an "Application for Leave to File Motion for Post-Conviction Relief" in the Mississippi Supreme Court.  By this filing, he raised the following issues for consideration:

> Issue 1: Unreasonable search and seizure;

---

[1] There is no indication on the disposition of the case against Melton's daughter's boyfriend.

      Issue 2: Double jeopardy;
      Issue 3: Improper indictment;
      Issue 4: Assistance of counsel; and
      Issue 5: Self-incrimination.

On February 6, 2008, the Mississippi Supreme Court found that his application "failed to make a substantial showing of the denial of state or federal right and should therefore be denied." Melton v. State, No. 2008-M-00063, slip op. at 1 (Miss. Feb, 6, 2008).

Thereafter, Melton filed his petition in this court, raising the following grounds for relief:

      Ground One: Illegal search and seizure;
      Ground Two: Double jeopardy;
      Ground Three: Improper indictment; and
      Ground Four: Ineffective assistance of counsel.

The Respondent asserts that applicable portions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 12144, prevent this court from granting relief. The undersigned agrees.

## II. Discussion

### 1. Standard of Review

The standard of review of petitioner's claims is set forth in 28 U.S.C. § 2254(d). This section provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

4

Under AEDPA, where the state court adjudicated the petitioner's claim on the merits, this Court reviews questions of fact under § 2254(d)(2), while questions of law or mixed questions of law and fact are reviewed under § 2254(d)(1).  Factual findings are presumed to be correct, and the Court defers to the state court's decision regarding factual determinations unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000); § 2254(d)(2).  The Court independently reviews questions of law and mixed questions of law and fact to determine whether the state court's decision thereon was either "contrary to" or an "unreasonable application of" federal law.  Williams v. Taylor, 529 U.S. 362, 403-408 (2000); Hill, 210 F.3d at 485.

The first step in this inquiry is to determine what federal law should be applied to the state court's decision.  Williams, 529 U.S. at 404.  The determinations of the state courts must be tested against "clearly established Federal law, as determined by the Supreme Court of the United States."  Id.; § 2254(d)(1).  Next, this Court must determine whether the state court's decision was "contrary to" that established Federal law.  The proper standard is an objective one, not subjective.  Id. at 408-409.  The term "unreasonable" is distinguished from "erroneous" or "incorrect";  thus, a state court's incorrect application of the law may be permitted to stand if it was, nonetheless, "reasonable."

A summary of the AEDPA law is that, "[t]o prevail on a petition for writ of habeas corpus, a petitioner must demonstrate that the state court proceeding 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  Robertson v. Cockrell, 325 F.3d 243,

247-48 (5th Cir. 2003) (en banc) (quoting 28 U.S.C. § 2254(d)(1) (2000)).  The courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." Catalan v. Cockrell, 315 F.3d 491, 493 (5th Cir. 2002) (citation and quotation omitted).

### 2. Ground One:  Illegal Search and Seizure

By Ground One, Melton urges that the "[p]olice's entrusion [sic] upon [his] private property was without reasonable suspicion or probable cause.  Therefore the search of [his] person, family, property and home was illegal."  He further denies that he consented in any manner to the search of his home.   For its part, Respondent maintains that the issue, which was considered by the Mississippi Supreme Court and the Mississippi Court of Appeal, is precluded by the Supreme Court's holding in  Stone v. Powell, 428 U.S. 465, 494 (1976).  The undersigned agrees.

The Fourth Amendment of the United States Constitution protects the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  In Fourth Amendment cases, a collateral review by a habeas court is primarily limited to a review of the trial court's suppression hearing.  In Stone v. Powell, 428 U.S. 465, 494 (1976), the Supreme Court held that "where the state has provided an opportunity for full and fair consideration of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  See also Lofton v. Whitley, 905 F.2d 885, 889, n.5 (5th Cir. 1990); Lucas v. Johnson, 132 F.3d 1069, 1083 (5th Cir. 1998); Penry v. Lynaugh, 832 F.2d 915, 918 (5th Cir. 1987); Bell v. Lynaugh, 828 F.2d 1085, 1091-92 (5th Cir. 1987).  This preclusion on federal

courts to grant habeas corpus relief based on a Fourth Amendment violation acts as a bar to such relief "absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review." Davis v. Blackburn, 803 F.2d 1371, 1372 (5th Cir. 1986) (quoting Stone, 428 U.S. at 494 n.37.)  The burden is on the habeas petitioner to plead and prove the denial of a full and fair hearing in state court.  Davis, 803 F.2d at 1372.

The Fifth Circuit has concluded that the "opportunity for full and fair litigation" "means just that: 'an opportunity.'" Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002), citing Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978).  That is, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," Stone forecloses review.  Williams v. Brown, 609 F.2d 216, 220 (5th Cir. 1980).  By his federal filing, Melton takes issue with the process afforded by Mississippi.  That is, he does not deny that the trial court held a suppression hearing or that the appellate court reviewed this issue on direct appeal and by his application for post-conviction relief.  Rather, he argues that the state courts reached the wrong result and that he could not adequately present this claim due to his counsel's failure to properly support the motion to suppress or his appeal on this issue with affidavits from witnesses who would have supported his version of events.  While the latter may bear on an ineffective assistance of counsel claim, it does not inform his Fourth Amendment claim.  Kimmelman v. Morrison, 477 U.S. 365, 382-83, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986) (Stone v. Powell does not bar ineffective assistance of counsel claim on habeas review based on an attorney's failure to adequately litigate  Fourth Amendment claim).  Accordingly, as Melton presents no argument that the Mississippi courts "systematically and

erroneously apply the state procedural bar rule to prevent adjudication of Fourth Amendment claims," his Fourth Amendment claim is barred. Moreno v. Dretke, 450 F.3d 158 (5th Cir. 2006) (in "'absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits,' Stone forecloses review") (quoting Williams v. Brown, 609 F.2d 216, 220 (5th Cir.1980)).

### 3. Ground Two: Double Jeopardy

By this ground, Melton argues that double jeopardy bars his convictions as to counts one and two of the indictment-- possession of precursor chemicals with intent to manufacture methamphetamine, Miss. Code Ann. § 41-29-313, and unlawful manufacture of methamphetamine, Miss. Code Ann. § 41-29-139. According to Melton, "both charges are the result of a single crime committed." As set forth above, the Mississippi Supreme Court rejected this ground when ruling on Melton's application for post-conviction relief. This ruling is not contrary to clearly established law. In Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932), the Supreme Court set forth the following rule, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." However, as the Mississippi Court of Appeals has recognized with regard to the very statutes at issue here, Blockburger's "same elements" test does not come into play where the charged offenses are not the same act or part of the same transaction. Huff v. State, 828 So. 2d 228, 230 (MS. Ct App. 2001) (State's proof that precursor chemicals were stored at laboratory gave rise to charge of possession of precursor chemicals and

its proof that Huff manufactured methamphetamines gave rise to manufacturing charge); Cf. United States v. Finley, 477 F.3d 250 (5th Cir. 2007) (concluding that possession of methamphetine was not lesser included offense of possession with intent to distribute methamphetamine such that conviction of both would violate double jeopardy where separate stashes were involved and prosecuted); United States v. Johnson, 977 F.2d 1360, 1374 (10th Cir. 1992) (cited with approval in Finley and concluding that prosecution for possession of separate stashes of drugs and possession with intent to distribute did not violate Double Jeopardy).

Here, a review of the record shows that the prosecution had proof that Melton had two stashes of hydrochloric acid, one hidden under the back steps to his home and one stored in a shed outside his home, and, at least two stashes of ephedrine, one hidden under the back steps to his home and one stored in his laundry room. In the court's view, double jeopardy is not implicated as these separate stashes of precursor materials substantiate the separate charges, one for possession of the precursors and one for manufacture of the final product.

Moreover, even assuming that Double Jeopardy was violated in this instance, where Melton received concurrent sentences on these convictions, he would not be entitled to habeas relief. See Davis v. Thaler, No. 08-40450, 2010 WL 1439758, at *4 (5th Cir. April 12, 2010) ("The concurrent sentence doctrine is a tool of judicial economy. . . Under this doctrine, the existence of one valid sentence makes unnecessary the review of other sentences that run concurrently with it. . . We have applied this doctrine in a variety of cases, including cases with claims of Double Jeopardy violations.") (internal quotations and citations omitted); Williams v. Maggio, 714 F.2d 554, 555-56 (5th Cir.1983) ("even assuming that he could [prevail on the merits of his double jeopardy claim for duplicative convictions], the maximum habeas relief

available would be the invalidation of one of the sentences."); Towner v. State, 812 So.2d 1109,1115 (Miss. App., 2002 (double jeopardy issues arise where defendant receives consecutive sentences for what is essentially same offense).

As shown above, the Mississippi Supreme Court's ruling on this issue is neither contrary to, nor an unreasonably application of Blockburger.  Accordingly, habeas relief is not appropriate and should be denied as to this claim.

### 4. Improper Indictment

By this ground, Melton charges as follows:

> The face of the indictment is defective for adding onto the original charge of Count No. three:  Simple Possession of less than one ten (0.1) of a gram of methamphetamine.  Added was "with the intent to distribute." The Court of Appeals has ruled that this error is to be corrected by the Circuit Court. A mandate was issued on 3-27-07.  No correction has been made.

As Respondent points out,  this ground challenges a Mississippi appellate court's interpretation and application of Mississippi law, and this court cannot review the state court's decision. Bronstein v. Wainwright, 646 F.2d 1048, 1050 (5th Cir.1981).  Indeed, federal courts hold no supervisory power over state judicial proceedings, and federal *habeas corpus* relief is appropriate only when a conviction has been obtained in violation of some *constitutionally* protected right.  Smith v. Phillips, 455 U.S. 209, 221 (1981).  Contrary to Melton's assertion otherwise, this ground does not implicate the Due Process Clause of the Fourteenth Amendment, and accordingly, Melton's petition should be denied as to this ground.

### 5. Ineffective Assistance of Counsel

Finally, Melton asserts that he received ineffective assistance of counsel in the following ways: (1) counsel failed to ask for a continuance until three of Melton's witnesses could be

present; (2) counsel failed to subpoena the three witnesses; (3) counsel failed to object to the introduction of Melton's coerced confession; (4) counsel failed to provide Melton with documents that he needed to pursue his application for post-conviction relief.

As is well-established to warrant relief on this ground, Melton must demonstrate counsel's representation fell below an objective standard of reasonable competence as a result of which he was prejudiced. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). For its part, Respondent asserts that the Mississippi Supreme Court's conclusion that Melton failed to meet this burden was not contrary to or an unreasonable application of Strickland. The undersigned agrees.

Regarding his complaint that counsel failed to call witnesses at his trial, by his traverse, Melton offers the affidavit of his fiance' Tina Leggett. According to Leggett's affidavit, in her conversations with Melton's attorney, she verified that she could fully corroborate Melton's version of the events leading up to the search of his premise. Melton urges that his attorney should have called Leggett as a witness at both the suppression hearing and at trial. However, given that Leggett was his co-defendant, who had pending her own motion to suppress which was considered by the trial judge along with Melton's,[2] counsel was not deficient for failing to call her as a witness during the suppression hearing. Melton has not identified the other two witnesses which counsel should have called but did not and thus, cannot obtain relief on this basis. See McCoy v. Cabana, 794 F.2d 177, 183 (5th Cir. 1986) (Complaints of uncalled witnesses are not favored because presentation of testimony evidence is a matter of trial strategy,

---

[2] The trial judge denied Leggett's motion to suppress on the basis that she listed her residence as Melton's address.

and because allegations of what witness would have testified are largely speculative); Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984); United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) ("this court has viewed with great caution claims of ineffective assistance of counsel where the only evidence of a missing witness' testimony is from the defendant."). Further, the allegation that counsel failed to object to his allegedly coerced statement is not borne out by the record. Defense counsel objected and the trial court entertained his objection outside the presence of the jury.

Finally, Melton's claim that counsel failed to provide him with documents necessary to pursue his state post-conviction relief does not warrant relief. See Jackson v. Johnson, 217 F.3d 360, 364 (5th Cir.2000) (criminal defendant has no constitutional right to counsel on matters related to discretionary filings, as opposed to appeal of right); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002)("The constitutionally secured right to counsel ends when the decision by the appellate court [on an appeal of right] is entered" and does not extend to discretionary review).

The state court's decision on this ground was neither clearly contrary to nor an unreasonable application of Strickland. Therefore, the undersigned recommends that the relief be denied as to this ground as well.

### III. Conclusion

For the reasons above, it t is therefore the recommendation of the undersigned that the petition of Danny Melton be dismissed with prejudice and that a Final Judgment in favor of the Respondent be entered.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation

within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

      RESPECTFULLY SUBMITTED, this the 12th day of January, 2011.

      /s/ F. Keith Ball  
      UNITED STATES MAGISTRATE JUDGE